# IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF ARIZONA

Jonathan Bahr, individually and on behalf of a class of all persons and entities similarly situated,

        Plaintiff,

vs.

Securico Life Insurance Company,

        Defendant.

Case No. 2:25-CV-02721-PHX-DWL

**FIRST AMENDED CLASS ACTION COMPLAINT**

**Preliminary Statement**

1. Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

2. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.')…Private suits can seek either monetary or injunctive

relief. *Id…*This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

3. Plaintiff Jonathan Bahr brings this action under the TCPA alleging that Securico Life Insurance Company ("Defendant"), sent telemarketing calls promoting goods and services, including calls using pre-recorded messages and calls to numbers that were on the National Do Not Call Registry, such as the Plaintiff. Those calls were made without the call recipient's prior express written consent.

4. A class action is the best means of obtaining redress for the Defendant's wide-scale illegal telemarketing and is consistent both with the private right of action afforded by the TCPA and the fairness and efficiency goals of Rule 23 of the Federal Rules of Civil Procedure.

**Parties**

5. Plaintiff Jonathan Bahr is an individual residing in Arizona.

6. Defendant Securico Life Insurance Company is located in Texas.

**Jurisdiction & Venue**

7. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 because the Plaintiff's claims arise under federal law.

8. Venue is proper under 28 U.S.C. § 1391(b)(2) because the calls that were initiated to the Plaintiff and the putative class that are the subject of the litigation were sent into this District and to encourage the purchase of services to be provided in this District. As such, a substantial part of the events giving rise to the claims occurred in this District.

**TCPA Background**

9. In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In so doing, Congress recognized that "[u]nrestricted telemarketing . . . can be an intrusive invasion of privacy [.]" Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243, § 2(5) (1991) (codified at 47 U.S.C. § 227).

10. The TCPA makes it unlawful to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service or that is charged per the call. See 47 U.S.C. § 227(b)(1)(A)(iii).

11. The TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A) or 47 U.S.C. § 227(b)(1)(B). See 47 U.S.C. § 227(b)(3).

12. According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

13. In 2013, the FCC required prior express written consent for all autodialed or prerecorded calls ("robocalls") to wireless numbers and residential lines. Specifically, it ordered that:

14. [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e., that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.[]" In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

**Factual Allegations**

15. Defendant is a for-profit company that sells insurance, including funeral and burial insurance.

16. Plaintiff Bahr is a "person" as defined by 47 U.S.C. § 153(39).

17. Plaintiff's telephone number, 480-XXX-XXXX, is on the National Do Not Call Registry and has been registered continuously since November 15, 2024.

18. The Plaintiff's telephone number is used for residential purposes and is not associated with a business.

19. The Plaintiff's telephone number is assigned to a residential telephone exchange service for consumers, not a telephone exchange service for businesses.

20. The Plaintiff uses the telephone number for personal, family, and household purposes.

21. Mr. Bahr nonetheless received at least four calls from Defendant in March and April 2025.

22. All of the calls were from Caller IDs with (480) 97X-XXXX numbers.

23. Indeed, as discussed in more detail below, the March 11, March 15, March 27, and April 23, 2025 calls were all placed by or on behalf of Securico as part of a coordinated funeral/final-expense insurance telemarketing campaign.

24. The common caller-ID ranges, identical avatar voice and script, and the transfer on March 27 to Securico's producer Daniel Smith — who provided a Securico-specific identifier and solicited Securico products — all demonstrate that the calls were connected to Securico's telemarketing efforts.

25. The Plaintiff rejected the first two calls, once on March 11, 2025, and once on March 15, 2025, because he did not recognize the number.

26. On March 27, 2025, the Plaintiff answered the third call.

6

27. Upon answering, Plaintiff heard a clicking noise followed by an automated voice saying "Hello," indicating that the call originated from a pre-recorded message.

28. After Plaintiff responded, the automated voice began asking scripted questions to "qualify" Plaintiff for Defendant's services. Once Plaintiff answered, the automated voice stated, "You perfectly qualify, let me transfer you to an agent."

29. Plaintiff was then transferred to a live agent who identified himself as Daniel Smith, a broker for Securico Life Insurance Company, and stated that the call concerned funeral and burial insurance.

30. After this call, Plaintiff was called again on April 23, 2025, by the Caller ID 480-977-4305.

31. Plaintiff answered and then hung up.

32. The Plaintiff never asked for these calls.

33. The Plaintiff never did any business with the Defendant.

34. Plaintiff's privacy has been violated by the above-described pre-recorded telemarketing calls.

35. Plaintiff never provided his consent or requested the calls.

36. The calls were all unwanted, nonconsensual encounters.

37. Plaintiff and all members of the Classes, defined below, have been harmed by the acts of Defendant because their privacy has been violated and they were annoyed and harassed. In addition, the calls occupied their telephone lines, storage space, and bandwidth, rendering them unavailable for legitimate communication, including while driving, working, and performing other critical tasks.

38. Securico's motion to dismiss previously claimed that the Plaintiff's complaint failed to adequately identify Daniel Smith as an employee of the Defendant.

39. However, Daniel Smith did not identify a separate corporation that he was employed by. As a result, it is believed that he was employed by or directly affiliated with Securico as part of its sales force.

40. Many life insurers such as Securico hire or contract with individuals whom they label as "brokers" or "producers," but who in practice are employees subject to the company's direction, training, and discipline.

41. For example, Securico maintains authority over hiring, licensing, compliance training, and termination of individuals such as Smith.

42. To the extent Daniel Smith was not a formal employee, he was nonetheless an appointed producer/agent of Securico vested with authority to solicit and sell Securico policies. Securico provided him with the tools, product access, quoting platforms, and scripts necessary to complete sales on its behalf.

43. By maintaining this structure, Securico exercised day-to-day control over Smith's ability to sell its products, imposed compliance requirements, and conferred the appearance of employment to consumers like Plaintiff. Accordingly, Smith's telemarketing and solicitation conduct is imputable to Securico under doctrines of actual authority, apparent authority, or ratification.

44. Indeed, Securico distributes its life-insurance products through a network of licensed insurance producers who are authorized, contracted, or otherwise permitted to sell Securico policies ("Securico Producers").

45. Arizona law anticipates insurer use of producers and imposes supervisory duties on insurers that use them. See A.R.S. § 20-1241.04(A) (insurer must have and implement procedures to prevent producer violations).

46. These statutory duties reflect the insurer's right to control producer conduct when soliciting on the insurer's behalf.

47. If he was not a direct employee, Daniel Smith is a licensed insurance producer who, at the time of the calls, was authorized, contracted, or appointed to sell Securico's insurance, and assigned a Securico producer/agent code to submit applications, obtain quotes through Securico's portal, and earn Securico commissions. See, e.g., A.R.S. § 20-1243.03(A) (annuity disclosure identifying whether the producer is "authorized, contracted or appointed" by an insurer).

48. Securico controls or has the right to control the manner and means of its Producers' telemarketing, including by: (a) providing sales training on Securico products; (b) furnishing scripts and qualifying questions for final-expense/funeral insurance campaigns; (c) furnishing quoting and e-application systems available only to Securico-authorized producers; (d) approving advertising and outbound calling campaigns that use live-transfer flows to Securico Producers; and (e) reserving the right to terminate a Producer's authority for non-compliance.

49. Consistent with that framework, Plaintiff's March 27, 2025 call followed a Securico-approved prerecorded "qualifier" script that asked Securico-specific questions, then stated "You perfectly qualify, let me transfer you to an agent," and transferred

Plaintiff to Daniel Smith, who identified himself in connection with Securico and discussed Securico funeral/burial insurance.

50. As a result, upon information and believe, the prerecorded IVR and transfer tree used on March 27, 2025 were implemented by Securico or its authorized telemarketing vendor to generate leads for Securico and to connect qualified consumers directly to Securico Producers such as Smith.

51. After the transfer, Smith solicited the sale of Securico insurance, requested personal information used to quote Securico coverage, and offered to proceed with Securico's application process—acts consistent with actual or apparent authority and inconsistent with any purely independent "middleman" role.

52. To the extent Mr. Smith is not a direct employee of Securico, Securico is also liable under a theory of apparent authority.

53. Securico authorized use of its name in the IVR/transfer flow and permitted Producers to hold themselves out to consumers as Securico's sales representatives for Securico insurance.

54. These principal-level manifestations reasonably led Plaintiff to believe Smith had authority to solicit Securico sales in that call. See Restatement (Third) of Agency § 2.03 (apparent authority arises from principal's manifestations to third parties).

55. Securico's brand authorization, campaign scripting, and funneling of qualified consumers to a Securico Producer created a reasonable belief that Smith acted with Securico's authority to market Securico insurance.

56. Finally, to the extent Mr. Smith is not a direct employee of Securico, Securico is also liable under a theory of ratification.

57. Even if Smith or the live-transfer vendor were initially outside a formal agency relationship, Securico accepted the benefits of the telemarketing by allowing its Producers to receive and convert those transferred prospects; continued to permit the practice after learning of complaints and this suit; and failed to implement and enforce adequate TCPA controls.

58. Securico's violations were willful or knowing because Securico: (a) structured and approved the prerecorded qualifying script and live-transfer process used to solicit Securico policies; (b) used Producers to place outbound sales calls to DNC-registered numbers without adequate screening; and (c) failed to implement the written do-not-call procedures, training, and monitoring required by the FCC while continuing to accept and monetize the resulting leads.

**Class Action Statement**

59. Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

60. Plaintiff brings this action on behalf of himself and the following class (the "Class") pursuant to Federal Rule of Civil Procedure 23(b)(2) and/or (b)(3).

61. Plaintiff proposes the following Class definition, subject to amendment as appropriate:

11

**National Do Not Call Registry Class:** All persons within the United States: (1) whose residential telephone numbers were on the National Do Not Call Registry for at least 31 days; (2) but who received more than one telephone solicitation call from Defendant or a third party acting on Defendant's behalf; (3) within a 12-month period; (4) within the four years prior to the filing of the Complaint.

**Robocall Class:** Plaintiff and persons throughout the United States (1) to whom Defendant placed a call, or someone did on their behalf, (2) directed to a number assigned to a cellular telephone service, but not assigned to a Defendant customer or accountholder, (3) in connection with which Defendant used an artificial or prerecorded voice, (4) from four years prior to the filing of this case through the date of class certification.

62. Plaintiff is a member of and will fairly and adequately represent and protect the interests of the Class as he has no interests that conflict with any of the Class members.

63. Excluded from the Class are counsel, Defendant, and any entities in which Defendant have a controlling interest, the Defendant's agents and employees, any judge to whom this action is assigned, and any member of such judge's staff and immediate family.

64. Plaintiff and all members of the Class have been harmed by the acts of Defendant, including, but not limited to, the invasion of their privacy, annoyance, waste of time, the use of their telephone power and network bandwidth, and the intrusion on their telephone that occupied it from receiving legitimate communications.

65. This Class Action Complaint seeks injunctive relief and money damages.

66. Members of the Class as defined above, are identifiable through Defendant's dialer records, other phone records, and phone number databases.

67. Plaintiff does not know the exact number of members in the Class, but Plaintiff reasonably believes Class members number, at minimum, in the hundreds.

68. The joinder of all Class members is impracticable due to the size and relatively modest value of each individual claim.

69. Additionally, the disposition of the claims in a class action will provide substantial benefit to the parties and the Court in avoiding a multiplicity of identical suits.

70. There are well defined, nearly identical, questions of law and fact affecting all parties. The questions of law and fact, referred to above, involving the class claims predominate over questions that may affect individual Class members.

71. There are numerous questions of law and fact common to Plaintiff and to the proposed Class, including, but not limited to, the following:

72. Whether Defendant made multiple calls to Plaintiff and members of the National Do Not Call Registry Class;

73. Whether Defendant's conduct constitutes a violation of the TCPA; and

74. Whether members of the Class are entitled to treble damages based on the willfulness of Defendant's conduct.

75. Plaintiff has retained counsel with substantial experience in prosecuting complex litigation and class actions, and especially TCPA class actions. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the other members of the Class, and have the financial resources to do so.

76. Common questions of law and fact predominate over questions affecting only individual Class members, and a class action is the superior method for fair and

efficient adjudication of the controversy. The only individual question concerns identification of Class members, which will be ascertainable from records maintained by Defendant and/or its agents.

77. The likelihood that individual members of the Class will prosecute separate actions is remote due to the time and expense necessary to prosecute an individual case.

78. Plaintiff is not aware of any litigation concerning this controversy already commenced by others who meet the criteria for class membership described above.

**FIRST CAUSE OF ACTION**
**Violation of the Telephone Consumer Protection Act**
**(47 U.S.C. § 227(c)(5) & 47 C.F.R. § 64.1200(c) on behalf of Plaintiff and the National Do Not Call Registry Class)**

79. Plaintiff incorporates the allegations from all previous paragraphs as if fully set forth herein.

80. The foregoing acts and omissions of Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227, by making telemarketing calls, except for emergency purposes, to Plaintiff and members of the National Do Not Call Registry Class despite their numbers being on the National Do Not Call Registry.

81. Defendant's violations were negligent, willful, or knowing.

82. As a result of Defendant's and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf, violations of the TCPA, 47 U.S.C. § 227, Plaintiff and members of the National Do Not Call Registry Class are entitled to an award

1  of up to $500 and in damages for each and every call made and up to $1,500 in damages
2  if the calls are found to be willful.
3     83.   Plaintiff and the members of the National Do Not Call Registry Class are
4  also entitled to and do seek injunctive relief prohibiting Defendant and/or its affiliates,
5  agents, and/or other persons or entities acting on Defendant's behalf from making
6  telemarketing calls to telephone numbers registered on the National Do Not Call
7  Registry, except for emergency purposes, in the future.

## SECOND CAUSE OF ACTION

**Statutory Violations of the Telephone Consumer Protection Act
(47U.S.C. § 227(b)) on behalf of the Robocall Class**

84.   Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

85.   Defendant violated the TCPA by sending or causing to be sent calls to the cellular telephones and other protected telephones of Plaintiff and members of the Robocall Class using a pre-recorded messages without their prior express written consent.

86.   As a result of Defendants' violations of 47 U.S.C. § 227 et seq., Plaintiff and Robocall Class members are entitled to an award of $500 in statutory damages for each violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

87.   The Plaintiff and Robocall Class members are entitled to an award of treble damages if the Defendants' actions are found to have been knowing or willful.

88.     Plaintiff and Robocall Class members are also entitled to and do seek injunctive relief prohibiting Defendant from using a pre-recorded voice in the future, except for emergency purposes.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, prays for the following relief:

Injunctive relief prohibiting Defendant from calling telephone numbers advertising its goods or services, except for emergency purposes, to any residential number on the National Do Not Call Registry in the future;

That the Court enter a judgment awarding Plaintiff and all Class members statutory damages of $500 for each violation of the TCPA and $1,500 for each knowing or willful violation; and

An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing a Class the Court deems appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

Such other relief as the Court deems just and proper.

## JURY DEMAND

**Plaintiff requests a jury trial as to all claims of the complaint so triable.**

Dated: September 3, 2025

                                                    */s/ Anthony I. Paronich*
                                                    Anthony I. Paronich
                                                    Paronich Law, P.C.
                                                    350 Lincoln Street, Suite 2400
                                                    Hingham, MA 02043
                                                    Tel: (617) 485-0018
                                                    anthony@paronichlaw.com

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25